NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*


*v.*


RODNEY SMITH, *Appellant.*

No. 1 CA-CR 13-0248
FILED 5-8-2014

_____

Appeal from the Superior Court in Maricopa County
No. CR2012-132942-001
The Honorable William L. Brotherton, Jr.

**AFFIRMED IN PART; VACATED IN PART**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas K. Baird
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**K E S S L E R,** Presiding Judge:

¶1      Appellant Rodney Eugene Smith ("Smith") was tried and convicted of two counts of sale or transportation of narcotic drugs, a class two felony; one count of possession of narcotic drugs for sale, a class two felony; and one count of use of wire communication or electronic communication in drug-related transactions, a class four felony. Counsel for Smith filed a brief in accordance with *Anders v. California,* 386 U.S. 738 (1967), and *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999). Finding no arguable issues to raise, counsel requested that this Court search the record for fundamental error. Smith was given the opportunity to, but initially did not file, a *pro per* supplemental brief. Upon review of the record, we ordered and the parties filed supplemental briefs addressing whether Smith's conviction for possession of narcotic drugs for sale had to be vacated under double jeopardy principles. Smith also responded with a *pro per* supplemental brief addressing the double jeopardy issue. For the following reasons, we affirm Smith's convictions and sentences on all but the count for possession of narcotic drugs for sale, which we vacate. We also vacate that portion of Smith's sentence that requires him to pay the cost of his DNA testing.

### FACTUAL AND PROCEDURAL HISTORY

¶2      Police officers JT and CH discovered an online advertisement for the sale of liquid morphine. Officer JT used an undercover phone and contacted the number featured in the advertisement. On June 18, 2012, Officer JT received a text message regarding the advertisement from a person at that phone number.[1] Officer JT informed the person that he was out of town but discussed acquiring the morphine and giving the person marijuana when he returned. On June 20, Officer JT contacted the person to inform him that

---

[1] The record does not indicate how the person using the phone identified himself during the text communications. For the purposes of this decision, we refer to him as "the person."

he would be in the Phoenix area and asked how much of the morphine remained. The person responded that the entire 30-milliliter bottle was left and confirmed the purchase price of $120. The person and Officer JT arranged to meet at a specified location in northwest Phoenix later that day. The person stated that he would be in a black Pontiac.

¶3 Officers JT and CH drove to the meeting location and parked across the street to keep watch for the black Pontiac. The officers saw the car arrive at the agreed upon location. Officer JT sent a text message to the person expressing concerns that police might be in the area and suggesting that they relocate. The officers then observed the suspect vehicle leave the original meeting area, at which time the officers followed the vehicle. While following the Pontiac, Officer CH observed three passengers in the vehicle and testified at trial that he noticed "the glow of a cell phone on the sides of the rear passenger compartment." Officer CH also testified that he did not observe either of the front seat passengers reaching behind in such a way to suggest they might be placing an item in the backseat. The officers then stopped the vehicle for a traffic violation.

¶4 Smith was seated in the backseat, behind the driver. Officer JT asked Smith to exit the Pontiac, detained him, and placed him in the police vehicle. After the driver and other passenger had exited the vehicle, Officer CH seized a cell phone from the map pocket located at the rear of the driver's seat. Officer CH also seized a bottle of liquid morphine found wedged between the backseat cushions. Officer CH testified that he did not recall finding any other cell phones in the vehicle.

¶5 Smith was taken to a police substation and questioned by Officer JT. Officer JT presented the cell phone seized from the backseat to Smith. At trial, Officer JT testified that Smith admitted the phone belonged to him. Following Smith's admission, Officer JT used his undercover cell phone to call the phone number he had been calling in relation to this drug sale. The seized cell phone rang and the name "morph head," with Officer JT's phone number listed below, appeared on the screen. Officer JT also asked Smith about the morphine seized from the back seat of the vehicle. Smith denied using or possessing the morphine, and explained that it likely belonged to his grandmother and had probably fallen from her purse.

¶6 The State tried Smith on two counts of sale or transportation of narcotic drugs, one count of possession of narcotic drugs for sale, and one count of use of wire communication or electronic communication in drug-related transactions. The jury found Smith guilty on all counts.

During an aggravation hearing, Smith admitted to two prior convictions for aggravated assault, class three felonies. Smith also admitted to being on probation at the time of his arrest. As to counts one, two, and three, the court sentenced Smith to the enhanced presumptive sentence of 9.25 years for each count, to run concurrently. As to count four, the court sentenced Smith to the enhanced presumptive sentence of 4.5 years to run concurrent with counts one, two, and three. The court revoked Smith's probation as to his prior convictions and sentenced him to the presumptive sentence of 3.5 years on each count to run concurrently with each other, but consecutive to the sentences on the drug charges. Smith was credited for 751 days of presentence incarceration to be applied to the 3.5 years sentence.

¶7        Smith timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), -4033(A)(1) (2010).

**STANDARD OF REVIEW**

¶8        In an *Anders* appeal, we review the entire record for fundamental error. Error is fundamental when it affects the foundation of the case, deprives the defendant of a right essential to his defense or is an error of such magnitude that the defendant could not possibly have received a fair trial, and is reversible if it prejudiced the defendant. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005).

**DISCUSSION**

¶9        Our review of the record shows that the proceedings were held consistent with the Arizona Rules of Criminal Procedure. Smith and his counsel were present at all proceedings, Smith was given a chance to speak at his sentencing hearing, and the sentences were within the range permitted by law.[2]   However, we address four issues separately:

---

[2] The trial court determined that, pursuant to A.R.S. § 13-708(C) (Supp. 2013), it could not sentence Smith to anything less than the presumptive term because he committed his crimes while on probation for a different felony conviction. We recently explained in *State v. Large*, 234 Ariz. 274, 279-80, ¶ 16, 321 P.3d 439, 444-45 (App. 2014), that a defendant is entitled to have a jury find his release status beyond a reasonable doubt when that status exposes him to a higher mandatory minimum penalty. *Large* is not implicated here, however, because Smith admitted to his probation status after an appropriate colloquy.

sufficiency of the evidence, the voluntariness of Smith's statements to police, double jeopardy, and DNA testing.

## I.    Sufficiency of the Evidence

**¶10**    In reviewing the sufficiency of evidence, "[w]e construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25, 555 P.2d 1117, 1118-19 (1976)).

**¶11**    Smith was charged and convicted pursuant to A.R.S. § 13-3408(A)(7) (2010), which makes it unlawful to knowingly "[t]ransport for sale, . . . offer to transport for sale . . ., sell, transfer or offer to sell or transfer a narcotic drug."[3] The parties stipulated that the contents of the bottle seized by Officer CH from the backseat of the vehicle contained 29 milliliters of morphine, a narcotic drug pursuant to A.R.S. § 13-3401(20)(iii) (Supp. 2013). Therefore, the State had to prove that Smith knowingly transported the liquid morphine for sale.

**¶12**    The State presented sufficient evidence to prove Smith knowingly transported the liquid morphine for sale. The evidence included the online advertisement to sell the morphine featuring a phone number that was used by a person to text Officer JT to arrange the sale of morphine. Those communications indicated that the person communicating with the officers would show up at the agreed-upon sale location in a black Pontiac. Officer JT testified that while he was texting the phone number, the officers observed the black Pontiac move from one location to another consistent with the content of the text conversation. Officers JT and CH also testified that they saw cell phone light coming from the back of the car. Smith was the only passenger in the back seat, and after stopping the vehicle the officers found in the back seat the cell phone with which they had been communicating via text, along with a bottle of liquid morphine. Officer CH testified that he did not witness any movements by the front seat passengers that would indicate either of

---

[3] We address only the counts relating to transportation of drugs for sale and use of a communication device in a drug-related transaction because we vacate on other grounds Smith's conviction for possession of a narcotic drug.

them placed an object behind the driver. These facts suggest that Smith used the phone to communicate with Officer JT, knowingly transported morphine for sale, and used the cell phone from the back seat to arrange the sale with the officers. These facts are also sufficient to prove that Smith used an electronic communication device in relation to a drug transaction in violation of A.R.S. § 13-3417(A) (2010).

II.     Smith's Statements Introduced at Trial

¶13     Officer JT testified at trial that when asked, Smith admitted that the cell phone seized from the black Pontiac by Officer CH belonged to him. There is no evidence that Smith's statements, made during custodial interrogation, were given after the police advised Smith of his rights under *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). But even if Smith's statements were inadmissible, their admission is not reversible error.

¶14     Smith did not request and the court did not hold a voluntariness hearing. Generally, a court need not hold a voluntariness hearing unless the defendant requests a hearing or objects to the admission of statements as involuntary. *State v. Alvarado*, 121 Ariz. 485, 487, 591 P.2d 973, 975 (1979) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). When the evidence raises a voluntariness issue, however, a court should hold such a hearing *sua sponte*. *State v. Finn*, 111 Ariz. 271, 275, 528 P.2d 615, 619 (1974). Erroneous admission of such evidence does not mandate reversal if the error is harmless. *State v. Devaney*, 18 Ariz. App. 98, 100, 500 P.2d 629, 631 (1972).

¶15     Assuming without deciding that admission of Smith's statements made while responding to custodial interrogation were inadmissible for failure to give *Miranda* warnings, we find any such error harmless. Smith's admission that the cell phone belonged to him is not dispositive of whether Smith was the person using the cell phone at the times in question. Other evidence presented at trial, as summarized above, is sufficient for us to conclude beyond a reasonable doubt that even without the phone ownership evidence, the jury would have found Smith guilty. Therefore, the admission of Smith's statement is harmless error.

III.    Double Jeopardy

¶16     With count two, Smith was charged and convicted of transportation of a narcotic drug for sale pursuant to A.R.S. § 13-3408(A)(7). With count three, Smith was charged and convicted pursuant to A.R.S. § 13-3408(A)(2) (2010) for knowingly "possess[ing] a narcotic

drug for sale." When both alleged crimes are based on the same facts, to "possess for sale" is a lesser included offense of the greater crime, to "transport for sale." *State v. Cheramie*, 218 Ariz. 447, 449, ¶ 11, 189 P.3d 374, 376 (2008) ("Given Arizona's broad definition of 'possess,' we cannot conceive how a person can 'transport' drugs without having possession of or dominion or control over them."). As the State properly states in its supplemental brief, to be convicted of an offense and its lesser-included offense based on the same operative facts is double jeopardy and amounts to fundamental error. *Id.* at 448-49, ¶¶ 9-12, 189 P.3d at 375-76; *State v. Ortega*, 220 Ariz. 320, 323-24, ¶¶ 7-9, 206 P.3d 769, 772-73 (App. 2008) (holding that to convict a defendant of an offense and its lesser-included offense is fundamental, prejudicial error because they are considered the same offense for purposes of double jeopardy); *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 362-63, ¶ 10, 965 P.2d 94, 96-97 (App. 1998). In such a case, the proper remedy is to vacate the conviction of the lesser-included sentence. *State v. Welch*, 198 Ariz. 554, 557, ¶ 13, 12 P.3d 229, 232 (App. 2000).

**¶17** Smith was convicted of knowingly transporting a narcotic drug for sale and its lesser-included offense, knowingly possessing a narcotic drug for sale. Both convictions are based on the same sale and possession of morphine. Accordingly, we vacate Smith's conviction and sentence as to the lesser-included crime: count three, possession of narcotic drugs for sale.

IV.    DNA Testing

**¶18** As part of Smith's sentence, the trial court required him to submit to and pay for DNA testing pursuant to A.R.S. § 13-610 (Supp. 2013). After the court imposed Smith's sentence, we held in *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013), that there is no basis under that section to require a convicted defendant to pay the cost of his DNA testing. Therefore, we vacate that portion of Smith's sentence that requires him to pay the cost of his DNA testing.

**CONCLUSION**

**¶19** For the foregoing reasons, we affirm Smith's convictions and sentences for counts one, two, and four, but vacate his conviction and sentence for count three and that portion of his sentence that requires him to pay the cost of his DNA testing. Upon the filing of this decision, counsel shall inform Smith of the status of the appeal and his options. Defense counsel has no further obligations unless, upon review, counsel

finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Smith shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: MJT